UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-11141-RGS

BRYAN P. NEWELL

v.

AMERICA'S SERVICING COMPANY,
a division of Wells Fargo Bank, N.A.

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO DISMISS

September 9, 2013

STEARNS, D.J.

Plaintiff Bryan P. Newell brought this action against defendant Wells Fargo Bank, N.A., incorrectly identified as "America's Servicing Company, a division of Wells Fargo Bank, N.A." (Wells Fargo), alleging in a single-count First Amended Complaint that Wells Fargo violated Mass. Gen. Laws ch. 93A (Chapter 93A) by giving false and pretextual reasons for denying his applications for a home mortgage modification. Presently before the court is Wells Fargo's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion will be granted.

BACKGROUND[1]

[1] The following facts are drawn from the well-pleaded allegations in the Amended Complaint and documents attached as exhibits or incorporated by reference therein. *See Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993).

Newell purchased his Quincy, Massachusetts home in 1982 and lives there with his wife. In 2005, he refinanced his original mortgage, obtaining a $160,000 loan, at six percent (6%) interest, payable over thirty (30) years. Wells Fargo is the servicer of the loan.

After the refinancing, a reduction in hours at his workplace caused Newell to fall behind in his mortgage payments. According to the Amended Complaint, Wells Fargo contacted Newell by letter and telephone urging him to submit an application for a loan modification under the Obama Administration's Home Affordable Modification Program (HAMP). Over the course of "at least the last two years," Newell has repeatedly submitted to Wells Fargo the financial information required to perfect HAMP eligibility. Notwithstanding Newell's desire to participate in HAMP, Wells Fargo has denied each of his applications.

Newell alleges that Wells Fargo has given "misleading and pretextual" reasons for the denials. As alleged in the Amended Complaint, on May 4, 2011, Wells Fargo informed Newell that his application had been rejected because his debt-to-income ratio was too high. According to Newell , there is no HAMP guideline that conditions a mortgage modification on this metric, which in any event Wells Fargo miscalculated. Wells Fargo denied a second

application in February of 2012 because it was "unable to create an affordable loan payment equal to 31% of your reported gross monthly income," and yet a third in August of 2012 because it was "unable to reduce principal and interest mortgage payments." Elaborating on the explanation, Wells Fargo claimed that an "investor restriction" in the trust documents governing Newell's loan prevented it from lowering the interest rate.[2] Newell insists that it is open to Wells Fargo under the HAMP guidelines to extend the term of his mortgage and reduce his interest rate. He denies (or strongly doubts) the existence of an investor restriction that prohibits Wells Fargo from doing so.

Newell brought this action in the Massachusetts Superior Court on April 12, 2013, seeking damages and equitable relief. Wells Fargo removed the case to this court and on May 29, 2013, filed the present Motion to Dismiss. After reviewing the motion and Newell's opposition, the court issued an order on August 12, 2013, directing the parties to file within thirty days the trust documents referenced in the Amended Complaint and specifically directing Wells Fargo to produce documentary evidence of the claimed investor restriction.

---

[2] According to an assignment recorded in the Norfolk Registry of Deeds, book 30100, page 72, Newell's loan is owned by US Bank National Association, as Trustee for Credit Suisse First Boston Mortgage Acceptance Corporation Mortgage Pass-Through Certificates, Series 2006-1.

On September 4, 2013, Wells Fargo submitted an executed copy of the applicable Pooling and Servicing Agreement (PSA). As relevant to the issues here, the PSA provides:

> Consistent with the forgoing, in instances when a Non-designated Mortgage Loan is in default or if default is imminent, and if it is determined by the master servicer or the Servicer to be in the best interests of the certificate holders, **the Servicer may permit a loss mitigation modification of the mortgage loan** rather than proceeding with default servicing and/or foreclosure; **provided, however, that** (1) any mortgage loan subject to such modification must be 15 days or more delinquent immediately prior to such modification, (2) unreimbursed Monthly Advances, unreimbursed Servicing Advances, and unpaid Servicing Fees related to a mortgage loan may be added to the outstanding principle balance of a mortgage loan only once during the life of a loan, (3) such capitalized amounts added to the outstanding mortgage loan balance must be fully amortized over the remaining term of the mortgage loan, **(4) the final maturity date of any mortgage loan shall not be extended, (5) no change to the Mortgage Rate is permissible,** (6) the aggregate current principal balance of all mortgage loans subject to modifications can be no more than five percent (5%) of the aggregate balance of the mortgage loans as of the cut off date, and (7) such modifications may be implemented only by Servicers that have been approved by the Depositor for that purpose.

PSA, Section 3.05(b) (emphasis added). Wells Fargo simultaneously submitted a redacted copy of a mortgage loan schedule confirming that Newell's mortgage loans is among the loans governed by the PSA.

DISCUSSION

To survive a motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court explained in *Twombly* that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544 at 555 (internal citations and quotations omitted). In reviewing a Rule 12(b)(6) motion, the court "may consider 'documents the authenticity of which are not disputed by the parties; documents central to plaintiff['s] claim; and documents sufficiently referred to in the complaint.'" *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007), quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (original alterations omitted).

"Because courts have almost uniformly found that HAMP creates no private right of action, consumer protection statutes – and Massachusetts's broadly interpreted Chapter 93A in particular – have become an attractive alternative means of attempting to recover for alleged HAMP violations where no action is otherwise available." *Okoye v. Bank of New York Mellon*, 2011 WL 3269686, at *7 (D. Mass. July 28, 2011) (footnote omitted). In evaluating

Chapter 93A claims premised on violations of the HAMP guidelines or a failure to grant a loan modification under those guidelines, sessions of this court have routinely held that a viable Chapter 93A claim will lie only if the activity would be independently actionable under Chapter 93A as unfair and deceptive.  *See id.* at *8 (collecting cases).

The limited number of Chapter 93A claims that have survived motions to dismiss "have alleged a pattern of misrepresentations, failure to correct detrimental errors, and/or dilatory conduct on the part of the servicer and/or bank that the courts could have found amount to unfair or deceptive practices," or have involved a "servicer's alleged representation that compliance with the [Trial Period Plan] would lead to permanent modification, which thereby induced the homeowners to continue payments when the servicer never intended to modify the loan."  *Id.* at *9, citing *Blackwood v. Wells Fargo Bank, N.A.*, 2011 WL 1561024, at *4 (D. Mass. April 22, 2011); *Morris v. BAC Home Loans Servicing, L.P.*, 775 F. Supp. 2d 255, 262-263 (D. Mass. April 4, 2011). In *Morris*, for example, the court denied the defendant loan servicer's motion to dismiss and permitted the plaintiffs to file an amended complaint based on the plaintiffs' oral representations "that [the defendant] a history of being nonresponsive to the plaintiffs' efforts to obtain

a loan modification, and that a prior such effort had yielded higher monthly payments, an error that [the defendant] made little or no effort to fix." 775 F. Supp. 2d at 263.  In denying the defendant's motion to dismiss in *Blackwood*, the court likewise noted that the plaintiff "alleged numerous misrepresentations regarding the status of his application for a HAMP modification as well as concerning the defendants' intention to foreclose." 2011 WL 1561024, at *4.  Allegations of mere technical violations or clerical errors, by contrast, fail to give rise to a Chapter 93A claim.  *See, e.g., Bean v. Bank of N.Y. Mellon*, 2012 WL 4103913, at *8 (D. Mass. Sept. 18, 2012) (dismissing a Chapter 93A claim predicated on the fact that the defendant "referred [plaintiff's] loan to foreclosure without first having provided her with written determination of ineligibility for HAMP, did not exhaust reasonable solicitation efforts to get her to participate in HAMP, did not allow a 30 day borrower response period, and did not provide a written certification to the foreclosure attorney or trustee stating that she was not HAMP-eligible"); *Kozaryn v. Ocwen Loan Servicing*, 2011 WL 1882370, at *3 (D. Mass. 2011) (dismissing a Chapter 93A claim premised on the servicer's denial of a loan modification on the allegedly false basis of nonsubmission of financial documents).

None of the factors that have permitted Chapter 93A claims to survive a Rule 12(b)(6) motion are present here. The PSA applicable to Newell's loan plainly prohibits adjustments to the loan's final maturity date or interest rate, and HAMP does not override such restrictions.[3] *See Edwards v. Aurora Loan Servs., L.L.C.*, 791 F. Supp. 2d 144, 151 (D.D.C. 2011) ("Plaintiffs' receipt of a HAMP modification is subject to a series of wholly discretionary decisions that must be made before such a modification can proceed. It is first subject to the discretion of Treasury, which is free to define the criteria for HAMP as it sees fit. Then [the servicer] must agree to participate in the program, and if the loan is investor-owned, the investors must agree to permit modification"); *Williams v. Geithner*, 2009 WL 3757380, at *3 (D. Minn. Nov. 9, 2009) (noting that even where an applicant is eligible under HAMP, servicers are not required to modify a loan if modification is otherwise prohibited by an investor). Thus, even assuming that a Chapter 93A claim could arise from the denial of a HAMP application based on a false representation that an investor restriction barred modification, that is not the case here. Left only with the

---

[3] Newell's citation to 15 U.S.C. § 1639a does not advance his cause. While the provision provides a safe harbor for servicers of pooled mortgages who modify home loans meeting certain conditions, it does not compel them to do so. *See Jones v. Premier One Funding, Inc.*, 2010 WL 841277, at *3 (N.D. Cal. 2010).

allegation that Wells Fargo miscalculated Newell's debt-to-income ratio and misstated its significance, his Complaint fails to suggest the "pattern of misrepresentations" necessary to withstand a motion to dismiss.

ORDER

Wells Fargo's Motion to Dismiss is ALLOWED with prejudice.

SO ORDERED.

/s/ Richard G. Stearns
______________________________
UNITED STATES DISTRICT JUDGE